UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICE B.,<br>               Plaintiff,<br>    v.<br>KILOLO KIJAKAZI,<br>               Defendant. | Case No. 20-cv-05897-DMR<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 14, 17 |

Plaintiff Alice B. moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Plaintiff not disabled and therefore denied her application for benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. [Docket No. 14 ("Pltf. Mot."), 18 ("Reply").] The Commissioner cross-moves to affirm. [Docket No. 17 ("Def. Mot.").] For the reasons stated below, the court grants Plaintiff's motion, denies the Commissioner's cross-motion, and remands this case for further proceedings.

**I.  PROCEDURAL HISTORY**

Plaintiff filed an application for Social Security Disability Insurance ("SSDI") benefits on May 29, 2017, which was initially denied on October 31, 2017 and again on reconsideration on June 26, 2018. Administrative Record ("A.R.") 75, 105-09, 112-16, 165-68. An Administrative Law Judge ("ALJ") held a hearing on October 29, 2019 and issued an unfavorable decision on December 4, 2019. A.R. 18-32, 37-74. The ALJ determined that Plaintiff has the following severe impairments: bipolar II disorder, depressive disorder, generalized anxiety disorder, mood disorder NOS, personality disorder NOS with borderline features, and alcohol use disorder. A.R. 23. The ALJ found that Plaintiff retains the following residual functional capacity (RFC):

> [T]o perform a full range of work at all exertional levels but with the

> following nonexertional limitations: she has the ability to perform and sustain 3 to 4 step tasks that involve no more than occasional, superficial social interaction with coworkers and supervisors and can do work that does not involve interaction with the public.

A.R. 25. Relying on the opinion of a vocational expert ("V.E.") who testified that an individual with such an RFC could not perform Plaintiff's past relevant work but could perform other jobs existing in significant numbers in the national economy, the ALJ concluded that Plaintiff is not disabled. A.R. 30-32, 68-69.

After the Appeals Council denied review, Plaintiff sought review in this court pursuant to 42 U.S.C. § 405(g).

## II.   ISSUES FOR REVIEW

1. Did the ALJ err in evaluating Plaintiff's subjective symptom testimony?
2. Did the ALJ err in evaluating the medical opinion testimony?
3. Did the ALJ err in evaluating the lay witness testimony?

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla, but less than a preponderance." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal quotation marks and citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation marks and citation omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's

decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal quotation marks and citations omitted).

## IV. DISCUSSION

### A. Subjective Symptom Testimony

Plaintiff first argues that the ALJ erred in improperly discounting her subjective symptom testimony. The court agrees.

#### 1. Legal Standard

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms, like pain, requires a two-step analysis. 20 C.F.R. § 404.1529; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citations omitted). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. § 404.1529(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citation omitted). Absent affirmative evidence that the claimant is malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the claimant's testimony. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The Ninth Circuit has reaffirmed the "specific, clear and convincing" standard applicable to review of an ALJ's decision to reject a claimant's testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

#### 2. Analysis

Plaintiff alleged that she is disabled based on her bipolar II disorder, depression, anxiety, nightmares, and insomnia. A.R. 202. She testified that the main thing preventing her from working is her inability to handle stress. A.R. 54-55. She said she worked as a data analyst for the University of California, Santa Cruz, until 2016, when she had to go out on disability leave because she could not handle the stress of that job. A.R. 42-44. She also testified that she is now cognitively unable to do the math required for that job. A.R. 44, 56. Since leaving that job, she

3

has taken culinary arts classes and had two part-time jobs as a chocolatier and cake decorator, but she was fired from both jobs due to her inability to maintain the pace required or learn and remember new skills. A.R. 50-51, 57-59. She has been unable to complete her associates degree in culinary arts because the last class remaining is too intensive. A.R. 51, 55-56. She now volunteers with Meal on Wheels up to 12 hours per week, but sometimes misses a shift or has to leave early due to anxiety. A.R. 47-48, 60-61.

Some days Plaintiff's anxiety and depression prevent her from leaving the house entirely, even to go to the grocery store or walk her dog. A.R. 59-60. Plaintiff estimated that on 15 to 20 days out of the month she does not leave the house at all, except to walk her dog. A.R. 60. Three or four times per month she has full-blown panic attacks from getting overstressed, overwhelmed, or in crowded situations. A.R. 62. When she has a panic attack, she has to drop everything she is doing and go home right away. A.R. 62.

While Plaintiff said she does not need help to perform her self-care, she also testified that she does not reliably maintain her hygiene when she is depressed, and only showers when she can no longer remember the last time she showered or when she has something important to do. A.R. 52, 63-64. Plaintiff splits household chores with her roommate and sometimes picks up her own medication, although sometimes her mom picks it up for her. A.R. 52-54. Plaintiff can cook simple meals for herself, like frying a sausage or cooking a baked potato, but sometimes she gets distracted and forgets she is cooking and leaves burners on. A.R. 51, 63.

In her decision, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but also found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not entirely consistent with the medical evidence and other evidence in the record. A.R. 26. Because the ALJ did not find any affirmative evidence of malingering, she was required to provide "specific, clear, and convincing reasons" supported by substantial evidence for discounting Plaintiff's subjective symptom testimony in this way. *See Vasquez*, 572 F.3d at 591.

The ALJ gave three reasons for discounting Plaintiff's symptom testimony, finding Plaintiff's testimony inconsistent with: (1) the objective medical evidence in the record; (2) the

treatment record, showing Plaintiff's impairments were treated "conservatively" with prescription medication, and that her symptoms improved with adjustments to her medication; and (3) Plaintiff's daily activities. A.R. 26-28. The court does not find any of these reasons legally sufficient.

First, although the ALJ summarized the findings of several objective examinations, A.R. 27, she did not explain what portions of Plaintiff's testimony were inconsistent with which objective findings or why. *See Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) ("It's not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible.") (citation omitted). Nor is any clear inconsistency apparent to the court. The objective findings cited by the ALJ include depression, anxiety, suicidal ideation, slowed or pressured speech, mildly unkempt appearance, hyperventilating, vacillating hopelessness, and spotty memory. A.R. 27. These appear consistent with Plaintiff's testimony regarding her bipolar disorder, depression, anxiety, panic attacks, cognitive problems, and inconsistent maintenance of hygiene. *See generally* A.R. 43-64. Accordingly, the court does not find the objective medical evidence to be a "specific, clear, and convincing reason" to discount Plaintiff's testimony.

Second, the ALJ's claim that Plaintiff's treatment was "conservative" and showed "symptom improvement with medication adjustments and trials" is not supported by substantial evidence. A.R. 26-27. Plaintiff sought treatment with both a therapist and a psychiatrist and, at the time of the hearing, was taking seven different prescription medications. A.R. 65-66. The ALJ did not explain what additional less "conservative" treatment was available and appropriate for Plaintiff's mental conditions. *See Cortes v. Colvin*, No. 2:15-CV-2277 (GJS), 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016) ("[A]n ALJ errs in relying on conservative treatment if 'the record does not reflect that more aggressive treatment options are appropriate or available.'" (quoting *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010)).

As for the ALJ's claim that Plaintiff conditions had improved with treatment, the ALJ cited six records in support of this claim. *See* A.R. 27. The first record cited was a treatment note by Plaintiff's psychiatrist, Dr. Sager, in June 2015, which was prior to Plaintiff's mental health crisis

5

1  and alleged onset date in January 2016, and is therefore not probative of Plaintiff's condition during
2  the relevant period. *See* A.R. 76, 369. The second cited record was a letter from Plaintiff's therapist,
3  LMFT Sue Ritter Splain, from January 2016. A.R. 358. This letter described recently-onset severe
4  depression, anxiety, and other symptoms, but indicated that Ritter Splain expected Plaintiff to
5  improve once the right combination of therapy, medication, and work accommodation was found.
6  A.R. 358. However, the ALJ failed to note that later letters by Ritter Splain, in 2017 and 2018,
7  indicated that Plaintiff continued to suffer from severe symptoms, and that Ritter Splain now
8  doubted whether Plaintiff's condition would improve. A.R. 290-91. In light of these later letters,
9  Ritter Splain's initial prognosis is not substantial evidence to show Plaintiff's condition improved.

The ALJ also cited four records from 2018 and 2019 that noted that Plaintiff's bipolar disorder was relatively stable or well-managed. *See* A.R. 27, 311, 335, 394, 401. In citing these records, the ALJ failed to note the numerous other records showing that Plaintiff's symptoms waxed and waned, and, after periods of improvement or stability, Plaintiff's symptoms then worsened again. *See, e.g.*, A.R. 376 (3/8/2016: "Dec[rease] in mood . . . Violent suicidal images, Helplessness, Can't do the things to take care of herself, Not doing own grocery shopping, Difficulty dressing self."), 382 (9/13/2016: "[C]ontinued depressive symptoms disrupted focus, concentration, mood stability (still has moments of crying for no clear reason . . .) . . . cont[inues] to have difficulty with socializing."), 291 (2/13/2017: "[H]as struggled significantly in the past three months."), 385 (6/20/2017: "Presents more depressed."), 295 (8/16/2017: "[Y]esterday couldn't get off the couch."), 391 (10/19/2017: "Episode of intense crying jag collapsed in crying heap."), 303 (12/20/2017: "[E]xtreme fatigue + depression – 3 wk."), 305 (1/30/2018: "[D]epression – neg thoughts non-stop."), 395 (7/3/2018: "[F]inished manic cycle recently hypomanic and is in depressive state now."), 402 (10/17/2019: "[P]resented highly anxious as she is a[b]out to have a SSDI hearing re her benefits."). Viewed in this context, the handful of records cited by the ALJ do not provide substantial evidence to support the claim that Plaintiff improved with treatment. *See Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (rejecting the ALJ's selective reliance on some medical records to find that the claimant's condition was improving, where many other records showed "continued, severe impairment"); *Williams v.*

*Colvin*, No. ED CV 14-2146-PLA, 2015 WL 4507174, at *6 (C.D. Cal. July 23, 2015) ("An ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination.") (citation omitted).

Lastly, the ALJ stated that Plaintiff's symptom testimony was inconsistent with her daily activities. A.R. 28. While the ALJ noted several of Plaintiff's activities and found that these activities "suggest a greater degree of functioning than alleged," the ALJ only identified one specific alleged conflict: "[d]espite her assertions of difficulties going out, the record shows she spends time with others including her housemate and a few friends." A.R. 28. Substantial evidence does not support this claimed inconsistency.

Plaintiff testified that 15 to 20 days per month she does not leave her house except sometimes to walk her dog. A.R. 60. This means that 10 to 15 days per month she does leave her house for other reasons. The record cited by the ALJ does say that she sometimes gets together with a few friends, but it does not specify how often she is able to do this. *See* A.R. 288. There is no inconsistency between sometimes being able to socialize and sometimes being unable to leave the house. In addition, Plaintiff's testimony that she sometimes has difficulty leaving the house is supported by the treatment record. *See, e.g.*, A.R. 290 ("[S]ometimes has difficulty leaving her house."), 291 ("[F]requently isolating in her house, finding it difficult to leave."), 293 ("[S]till doesn't like to be out."), 295 ("[Y]esterday couldn't get off the couch."), 296 ("[H]as barely left house."), 375 ("Pervasive anxiety . . . has had difficulty . . . leaving her house again."), 376 ("Not doing own grocery shopping . . . can only [socialize] with close friends for short periods of time."), 377 ("[S]till avoiding leaving house."), 382 ("[C]ont[inues] to have difficulty with socializing.").

In sum, none of the explanations given by the ALJ for discounting Plaintiff's testimony are specific, clear, and convincing reasons supported by substantial evidence. Accordingly, the ALJ erred and remand is warranted.

**B.     The ALJ's Consideration of Medical Opinion Evidence**

Plaintiff next argues that the ALJ erred in her evaluation of the medical opinion testimony

7

of (1) Plaintiff's treating psychiatrist, Dr. Sager and (2) state agency reviewing psychologist Dr. Anthoney. The court agrees on both counts.

### 1. Legal Standard

For applications filed after March 27, 2017, the SSA's regulations and several Social Security Rulings regarding the evaluation of medical opinion evidence have been amended and/or rescinded. This includes SSR 96-2p, "Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions." *See Rescission of Soc. Sec. Rulings 96-2p, 96-5p, and 06-3p*, SSR 96-2P, 2017 WL 3928298 (S.S.A. Mar. 27, 2017). Under the new regulations, the SSA will no longer give "any specific evidentiary weight, including controlling weight," to medical opinions or prior administrative medical findings, including those from treating physicians. 20 C.F.R. § 404.1520c(a). Instead, the SSA must evaluate the "persuasiveness" of all medical opinions based on several factors, including supportability, consistency, the source's relationship with the claimant, length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, whether the source has examined the claimant, any specialization, and other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(a), (c). "The two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that 'form the foundation of the current treating source rule.'" *V.W. v. Comm'r of Soc. Sec.*, No. 18-CV-07297-JCS, 2020 WL 1505716, at *13 (N.D. Cal. Mar. 30, 2020) (quoting Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853); *see* 20 C.F.R. § 404.1520c(b)(2).

"Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [they] considered the medical opinions' and 'how persuasive [they] find all of the medical opinions.'" *V.W.*, 2020 WL 1505716 at *14 (citations omitted). "Further, the ALJ is required to specifically address the two most important factors, supportability and consistency." *Id.* (citing 20 C.F.R. § 416.920c(b)(2)); *see also* 20 C.F.R. § 404.1520c(b)(2). As with all other determinations made by the ALJ, the ALJ's persuasiveness explanation must be supported by substantial

8

evidence. *See Patricia F. v. Saul*, No. C19-5590-MAT, 2020 WL 1812233, at *4 (W.D. Wash. Apr. 9, 2020) (finding that, under the new regulations, "[t]he Court must . . . continue to consider whether the ALJ's analysis has the support of substantial evidence.") (citing 82 Fed. Reg. at 5852). [1]

### 2. Analysis

#### a. Dr. Sager

Dr. Sager is Plaintiff's treating psychiatrist. He started treating Plaintiff in 2015. A.R. 403. In October 2019, Dr. Sager completed a Mental Impairment Questionnaire and provided a narrative summary of Plaintiff's condition. A.R. 403-09. Dr. Sager diagnosed Plaintiff with bipolar disorder type 2, panic disorder, agoraphobia, generalized anxiety disorder, and ADHD. A.R. 403. He opined that Plaintiff is unable to meet competitive standards in her abilities to: (1) remember work-like procedures; (2) understand and remember very short and simple instructions; (3) maintain attention for two-hour segments; (4) complete a normal workday or workweek without interruptions from psychologically based symptoms; (5) perform at a consistent pace without an unreasonable number and length of rest periods; and (6) deal with normal work stress. AR 405. He also opined that Plaintiff's impairments would cause her to miss more than four days of work per month and have to leave work early more than four days per month. A.R. 406.

Dr. Sager noted that no antidepressants have been persistently helpful for Plaintiff, and she has never had stabilization of her mood swings, despite some antidepressant effects of medication. A.R. 408. He also noted that, over the last four years, Plaintiff has not been able to tolerate more than 10 hours of work per week. A.R. 409. He therefore opined that Plaintiff cannot work more than 10 to 15 hours per week at a low stress job. A.R. 409.

The ALJ found Dr. Sager's opinions "not persuasive" because she found them inconsistent with: (1) the objective medical evidence; (2) Plaintiff's "mostly conservative care" and symptom stabilization and improvement with treatment; (3) Plaintiff's activities of daily

---

[1] In light of the new regulations, the parties dispute the extent to which Ninth Circuit case law decided under the prior regulations retains force. The court finds that a straightforward application of the new regulations and the substantial evidence standard is sufficient here to decide the case and so does not need to resolve this dispute.

living; and (4) Dr. Sager's own treatment notes. A.R. 29. While these stated reasons address the required categories of consistency and supportability, *see* 20 C.F.R. § 404.1520c(b)(2), the court finds the ALJ has not provided substantial evidence to support these conclusions.

Beginning with the objective medical evidence, the ALJ failed to explain how her summary of the objective medical evidence, including findings of depression, anxiety, suicidal ideation, slowed or pressured speech, mildly unkempt appearance, hyperventilating, vacillating hopelessness, and spotty memory, is inconsistent with Dr. Sager's assessed limitations. *See* A.R. 27. Without the ALJ's guidance, the court sees no inconsistency.

Next, as discussed above, substantial evidence does not support the ALJ's conclusion that Plaintiff's symptoms improved with conservative treatment.

With regard to Plaintiff's daily activities, the ALJ's statement that those activities are "intact" is not supported by substantial evidence. *See* A.R. 29. The ALJ cited a single record for this claim, but that record does not state that Plaintiff's daily activities are "intact" but rather lists some of the activities Plaintiff engages in, without stating how often she performs any of these activities. *See* A.R. 28-29, 288. Other records, which provide additional details, show the limitations to these daily activities. *See, e.g.*, A.R. 290 ("[S]ometimes has difficulty leaving her house."), 291 ("[F]requently isolating in her house, finding it difficult to leave."), 293 ("[S]till doesn't like to be out."), 295 ("[Y]esterday couldn't get off the couch."), 296 ("[H]as barely left house."), 375 ("Pervasive anxiety . . . has had difficulty . . . leaving her house again."), 376 ("Can't do the things to take care of herself, Not doing own grocery shopping, Difficulty dressing self . . . can only [socialize] with close friends for short periods of time."), 377 ("[S]till avoiding leaving house."), 382 ("[C]ont[inues] to have difficulty with socializing."). Viewed in context, the single record cited by the ALJ does not show that Plaintiff's daily activities are "intact" or inconsistent with Dr. Sager's opinions.

Lastly, the ALJ failed to explain how Dr. Sager's opinions are inconsistent with his own treatment notes. The court's review of those treatment notes does not reveal any inconsistencies. *See, e.g.*, A.R. 373 ("[C]ame to my office yesterday in crisis . . . has not been able to go back to work."), 375 ("Pervasive anxiety . . . has had difficulty . . . leaving her house again."), 376

("Dec[rease] in mood . . . Violent suicidal images, Helplessness, Can't do the things to take care of herself, Not doing own grocery shopping, Difficulty dressing self."), 377 ("[S]till avoiding leaving house . . . cannot think of returning to work without a panic attack occurring."), 382 ("[C]ontinued depressive symptoms disrupted focus, concentration, mood stability (still has moments of crying for no clear reason . . .) . . . cont[inues] to have difficulty with socializing."), 386 ("Still has episodes of panic and catastrophizing that lead to incapacitation."), 388 ("[S]ome improvement in focus and ability to persist in her current pa[r]t time job at a bakery, but still not . . . enough for her to meet work expectations."), 391 ("Episode of intense crying jag collapsed in crying heap."), 394 ("[O]ne dip . . . missed a week of class."), 395 ("[F]inished manic cycle recently hypomanic and is in depressive state now."), 399 ("[S]till reports a minimum of one episode of panic and feeling overwhelmed with a drop in her overall mood.").

The ALJ failed to provide substantial evidence to support her determination that Dr. Sager's opinions are not persuasive. This error warrants remand as well.

### b.     Dr. Anthoney

Dr. Anthoney was the state agency reviewing psychologist at the initial determination stage. *See* A.R. 85. Dr. Anthoney opined that Plaintiff has mild limitations in understanding, remembering, and applying information, moderate limitations in interacting with others, moderate limitations in concentrating, persisting, and maintaining pace, and mild limitations in adapting and managing herself. A.R. 80. Dr. Anthoney also opined that Plaintiff would perform best in an environment with limited interpersonal demands and can perform three to four step tasks if she can work independently of others. A.R. 85.

The ALJ found Dr. Anthoney's opinions persuasive. A.R. 28. This conclusion was based in large part on the ALJ's conclusion that Dr. Anthoney's opinions were consistent with: (1) the treatment record, which showed that Plaintiff's symptoms improved over time with medication adjustments and (2) Plaintiff's "intact" activities of daily living. *See* A.R. 28. As discussed above, the court finds that the ALJ failed to provide substantial evidence to support her conclusions about symptom improvement and intact activities of daily living. Accordingly, substantial evidence is also lacking for the conclusion that Dr. Anthoney's opinions are persuasive

11

because they are consistent with symptom improvement and intact activities of daily living. Therefore, on remand, the ALJ must re-assess the persuasiveness of Dr. Anthoney's opinions.

### C.     The ALJ's Consideration of Lay Witness Testimony

Plaintiff's last argument is that the ALJ erred in her consideration of the lay witness testimony of Plaintiff's mother. The court agrees.

#### 1.     Legal Standard

Testimony provided by a lay witness as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence to be taken into consideration by an ALJ unless he or she expressly discounts such evidence and provides "reasons germane to each witness" for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012), *superseded on other grounds by regulation*. An ALJ need not "discuss every witness's testimony on a individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

#### 2.     Analysis

Plaintiff's mother completed a third-party function report regarding Plaintiff's limitations in August 2017. A.R. 209-16. She wrote that Plaintiff suffers from bipolar disorder, depression, anxiety, and panic attacks, which at times render her incapable of going outside or maintaining basic hygiene. A.R. 209. Because of her conditions, Plaintiff's mother said that Plaintiff can no longer work full time, do high-level analytical work, host or attend social functions with large groups of people, drive long distances or go shopping without panic attacks, handle her finances and bills, or avoid getting lost. A.R. 210.

In her decision, the ALJ noted the third-party function report and stated that she had "fully considered" it in making her decision. A.R. 26. But the ALJ did not state whether she accepted or rejected this testimony or why. A.R. 26. Given that this testimony indicated an inability to perform full-time work, A.R. 210, the ALJ must have implicitly rejected it, but the ALJ did not provide any "germane" reasons for doing so. This was error. *See Lewis*, 236 F.3d at 511; *Molina*, 674 F.3d at 1114-15.

In opposing Plaintiff's motion on this point, the Commissioner raises two arguments. First, the Commissioner argues that there was no error because the new regulations provide that an ALJ is not required "to articulate how [they] considered evidence from nonmedical sources using the requirements [for evaluating medical opinions] in paragraphs (a)-(c) in this section." *See* 20 C.F.R. § 404.1520c(d). But the Ninth Circuit's "germane" reasons requirement for evaluating lay witness testimony has always been a different (and lower) standard than that required for evaluating medical opinions. *See Molina*, 674 F.3d at 1111. The new regulations providing that lay opinions do not need to be evaluated under the same standards as medical opinions is therefore consistent with the Ninth Circuit's germane reasons standard and so the Commissioner has offered no reason why that standard does not still apply, notwithstanding the new regulations.

In the alternative, the Commissioner argues that any error in the ALJ's failure to provide reasons for rejecting Plaintiff's mother's testimony was harmless, because that testimony was similar to Plaintiff's own testimony, and the ALJ gave specific reasons for rejecting Plaintiff's testimony. Because the court finds that the ALJ's reasons for rejecting Plaintiff's testimony were not supported by substantial evidence, the court cannot apply those reasons to Plaintiff's mother's testimony to find the error harmless. On remand, the ALJ must specifically address Plaintiff's mother's testimony in addition to re-assessing Plaintiff's testimony.

## V. CONCLUSION

For the foregoing reasons, the court grants Plaintiff's motion, denies the Commissioner's cross-motion, and remands this case for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: December 27, 2021

Donna M. Ryu
United States Magistrate Judge